UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY ALEGRE, et al., <br> Plaintiffs, <br> v. <br><br> UNITED STATES OF AMERICA, et al. <br> Defendants. | Case No.: 3:16-cv-2442-AJB-KSC <br><br> **ORDER:** <br><br> **(1) GRANTING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS, (Doc. No. 66); and** <br><br> **(2) GRANTING PLAINTIFFS LEAVE TO AMEND.** |

Before the Court is Defendants Amy Dutschke and Javin Moore's ("Individual Defendants") motion to dismiss the claims that seek personal liability against them in the Third Amended Complaint ("TAC"). (Doc. No. 66.) Those claims include: (1) Violation of Civil Rights – Due Process under the Fifth Amendment, (2) Violation of Civil Rights – Equal Protection under the Fourteenth Amendment; and (3) Conspiracy to Interfere with Civil Rights under *Bivens*. The Court finds: (1) the case does not warrant a new *Bivens* remedy, (2) a claim against any federal employees or government under the Fourteenth Amendment is inapplicable; and (3) plaintiffs failed to plead facts showing a conspiracy existed. The Court also finds that, nevertheless, qualified immunity applies to Dutschke and Moore for claims brought against them in their personal capacities. For these reasons,

1

the Court **GRANTS** the motion to dismiss and **DISMISSES** Dutschke and Moore in their individual capacities from litigation. (Doc. No. 66.)

## I. BACKGROUND

The following facts are taken from the TAC and construed as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

The facts of this case have been thoroughly detailed in previous documents, including this Court's previous order granting a motion to dismiss. (*See* Doc. No. 43.) Although the complaint has been amended several times, the core facts remain the same. Plaintiffs are the descendants of Jose Juan Martinez, Guadalupe Martinez, and their daughter Modesta Martinez Contreras (collectively, "Martinez Ancestors"). (Doc. No. 62 ¶ 28.) Plaintiffs are split into Groups A and B. (*Id.* ¶¶ 13–18.) Group A Plaintiffs include Plaintiffs who are: residents of San Diego County, "direct lineal descendants of Jose Juan Martinez and Guadalupe Martinez," "direct lineal descendants of Modesta Contreras," enrolled in the Band, but are not federally recognized as Band members by the BIA. (*Id.* ¶ 15.) Group B Plaintiffs include Plaintiff who are also San Diego County residents, are enrolled in the Bank, and are federally recognized by the BIA as Band members. (*Id.* ¶ 18.) Group A's claims are the subject of the instant motion to dismiss.

Plaintiffs assert each of the Martinez Ancestors was a full blood San Pasqual Indian. (*Id.*) In 2005, Plaintiffs submitted their applications to the Enrollment Committee for enrollment with the San Pasqual Band of Mission Indians in California ("Band"). (*Id.* ¶ 29.) The Enrollment Committee unanimously voted that Plaintiffs had established they were qualified for enrollment. (*Id.*) This determination "was predicated on a finding that Plaintiffs' ancestor Modesta's blood degree should be increased from ¾ to 4/4[.]" (*Id.* ¶ 30.) The Band's General Council then unanimously agreed with the Enrollment Committee on April 10, 2005. (*Id.* ¶ 30.) Later, on September 12, 2005, the Band's Business Committee concurred with both the General Council and the Enrollment Committee and sent its findings to former Superintendent of the Southern California

Agency, James Fletcher. (*Id.* ¶ 31.)

Three months later, on December 8, 2005, Fletcher sent Individual Defendant Amy Dutschke a letter stating that "the preponderance of the evidence does not sufficiently demonstrate that Modesta [] is full blood[,]" (*id.* ¶ 33), to which Dutschke concurred, (*id.* ¶ 35). However, Plaintiffs were never given written notice of either Fletcher or Dutschke's findings. (*Id.* ¶ 38.) Plaintiffs subsequently submitted FOIA requests to determine the status of their applications, to which they received responses on October 1, 2014, and May 27, 2015. (*Id.* ¶ 44). It was at this time Plaintiffs learned of Dutschke's negative determination of Plaintiffs' enrollment requests. (*Id.*)

## II. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

Plaintiffs' Fifth, Seventh, and Eleventh claims for relief in their TAC bring actions against Individual Defendants in their individual capacities. The Fifth and Eleventh claims are brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), while the Seventh claim is brought under the Fourteenth Amendment of the United States Constitution. Plaintiff's Eleventh claim is also brought under 42 U.S.C. § 1981. The Court discusses each in turn below.

### A. Plaintiffs' Fifth Claim for Relief Does Not Warrant a *Bivens* Remedy

Group A Plaintiffs first bring this action under *Bivens*, alleging Individual Defendants violated constitutional mandates by failing to adjudicate Plaintiffs' applications to be federally recognized members of the San Pasqual Band of Mission Indians. (Doc. No. 62 ¶ 130.) Individual Defendants move to dismiss Plaintiffs' *Bivens* claims based on: (1) an insufficient basis for implying a new *Bivens* action, (2) substantive defects in the *Bivens* claims, and (3) the qualified immunity doctrine. (Doc. No. 66-1 at 6.) Specifically, Individual Defendants argue a claim under *Bivens* is unwarranted for tribal enrollment application violations. (*Id.* at 13.) Individual Defendants further contend that in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the U.S. Supreme Court cautioned against expanding constitutional claims beyond the three scenarios in *Bivens*, *Davis*, and *Carlson*. (*Id.*) Therefore, because this case differs from the three previously-decided Supreme Court *Bivens* cases, Individual Defendants state a *Bivens* remedy should not be granted. (*Id.*) However, Plaintiffs argue the Supreme Court has already expanded *Bivens* claims to violations of the Fifth Amendment's Due Process Clause, under which they seek relief. (Doc. No. 79 at 15.) Additionally, Plaintiffs contend Congress has not provided an alternative remedy and has not explicitly declared that Plaintiffs may not recover damages under Fifth Amendment constitutional claims. (*Id.* at 17.)

In *Bivens*, the court established an implied private right of action for tortious deprivation of constitutional rights against federal officials in their personal capacity. *Bivens*, 403 U.S. at 389. However, "[a] *Bivens* remedy will generally not be available if a

comprehensive statutory scheme already exists for a defendant to seek redress of the alleged constitutional violation." *Loumiet v. U.S.*, 255 F. Supp. 3d 75, 84 (D.D.C. 2017); *see also*, *Ziglar*, 137 S. Ct. at 1858 (finding if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action).

As Individual Defendants correctly point out, the Supreme Court has granted *Bivens* remedies in only three cases: *Bivens*, *Davis*, and *Carlson*. (Doc. No. 66-1 at 13.) First, the Court in *Bivens* provided a damages remedy under the Fourth Amendment to persons who had been subjected by federal officers to unreasonable searches and seizures. *Bivens*, 403 U.S. at 396. The Court then held under *Davis v. Passman* that the Fifth Amendment Due Process Clause gave Plaintiff a damages remedy for gender discrimination. 442 U.S. 228, 248 (1979). Most recently, the Court in *Carlson v. Green* held that the Eighth Amendment's Cruel and Unusual Punishments Clause gave decedent's estate a damages remedy when federal jailers failed to treat decedent's asthma, resulting in his death. 446 U.S. 14, 25 (1980). Expanding the *Bivens* remedy beyond these three scenarios has recently been a "disfavored" judicial activity. *Iqbal*, 556 U.S. at 675. The Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Corr. Services Corp.*, 534 U.S. at 68. When deciding whether to provide a damages remedy, Congress is in a better position than the courts to consider if "the public interest would be served" by imposing a "new substantive legal liability." *Schweiker v. Chilicky*, 487 U.S. 412, 426–27 (1988) (quoting *Bush v. Lucas*, 462 U.S. 367, 390 (1983)).

### 1. Plaintiffs' Sufficiently Plead a Fifth Amendment Procedural Due Process Violation

Plaintiffs' factual allegations here raise issues of procedural due process under the Fifth Amendment—specifically, that Defendants failed to give Plaintiffs written notice of their determination that the Martinez Ancestors were not full blood San Pasqual Indian, resulting in denial of tribal enrollment. (Doc. No. 62 ¶ 133.) Plaintiffs contend the Martinez Ancestors are indeed full blood San Pasqual Indian, giving them a potential property

5

3:16-cv-2442-AJB-KSC

interest in the benefits of tribal enrollment. (*Id.* ¶ 28.) However, even if the Court found there was in fact a Fifth Amendment Due Process violation, Plaintiffs' claims still fail because they cannot state a *Bivens* claim and the Individual Defendants have qualified immunity.

### 2. Plaintiffs' Case Presents a "New *Bivens Context*"

The *Ziglar* court articulated a test to determine whether a case presents a "new *Bivens* context." *Ziglar*, 137 S. Ct. at 1859. Simply put, if the case is meaningfully different from the three *Bivens* cases, the context is new:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

*Id.* If the case presents a "new *Bivens* context" and there are special factors counselling hesitation in the absence of affirmative action by Congress, then a *Bivens* remedy is not available. *Id.* at 1857; *see also Carlson*, 446 U.S. at 18.

Applying previous courts' rulings to the case at hand, this Court finds that Plaintiffs' case presents a "new *Bivens* context." Here, the Plaintiff pleads a Fifth Amendment Due Process Clause violation, to which the Court granted a remedy in *Davis*. (Doc. No. 62 ¶ 128.) However, the facts here meaningfully differ from the three *Bivens* cases. (Doc. No. 66-1 at 13.) First, the Individual Defendants here are civil servants, unlike the defendants in the three *Bivens* cases. (*Id.*) Second, compared to the overt acts in the *Bivens* cases, the Individual Defendants' official actions were general, rather than specific—here, Individual Defendants allegedly "failed" to take certain administrative actions, such as "fail[ing] to review and make a decision (adjudicate) Plaintiffs applications[.]" (Doc. No. 62 ¶ 130.) Moreover, the Individual Defendants allegedly operated under or violated 25

C.F.R. § 61.11(b), differing from the statutory mandates of federal officers, prison officials, and Congressmen. (*Id.* ¶¶ 130, 132, 136.) Lastly, *Bivens* has yet to be applied in the context of tribal enrollment disputes.

### 3. *Individual Defendants Have Demonstrated an Adequate Alternative Remedy and Special Factors Counseling Hesitation*

As such, this Court must determine whether the Individual Defendants: (1) "show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective[,]" or (2) "demonstrate special factors counselling hesitation in the absence of affirmative action by Congress." *Carlson*, 446 U.S. at 18–19 (internal citations omitted) (original emphasis). Here, Individual Defendants correctly articulate the Ninth Circuit has previously held that the Administrative Procedures Act ("APA") provides an adequate alternative remedy to a *Bivens* claim. (Doc. No. 66-1 at 14, *see Western Radio Servs. Co. v. U.S. Forest Service*, 578 F.3d 1116, 1123 (9th Cir. 2009) ("We therefore conclude that the APA leaves no room for *Bivens* claims based on agency action or inaction"); *see also Winnemem Wintu Tribe v. U.S. Dept. of Interior*, 725 F. Supp. 2d 1119, 1148–49 (E.D. Cal. 2010) (holding that because Plaintiffs pled the same allegations under both the APA and *Bivens*, the APA provided an "adequate remedial scheme.").) Plaintiffs' First claim under the APA against Individual Defendants in their official capacity substantially mirrors their Fifth claim under *Bivens*. (*See* Doc. No. 62 ¶¶ 57, 72, 130, 132.) Moreover, Plaintiffs fail to address why the APA would not preclude their *Bivens* claim. (*See generally* Doc. No. 79.) Although the APA does not provide for either monetary damages (though it does provide "specific relief," including money payments) or the right to a trial by jury, both the Supreme Court and the Ninth Circuit have stated that alternative remedial measures without these features may still be adequate, "provided that the absence of such procedural protections was not inadvertent on the part of Congress." *Western Radio*, 578 F.3d at 1123. Therefore, Plaintiffs' *Bivens* claim fails this first test and recognizing a new *Bivens* claim is unwarranted.

Individual Defendants further contend that even if the APA did not provide an adequate remedy to Plaintiffs, there are special factors counseling hesitation here. (Doc. No. 66-1 at 14.) This Court agrees with Individual Defendants that "'Congress is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf." *Wilkie v. Robbins*, 551 U.S. 537, 562 (2007) (quoting *Bush*, 462 U.S. at 389.) Indeed, in addition to money damages, Plaintiffs here seek orders directing Individual Defendants to perform within their official governmental capacities. (Doc. No. 62 at 57.) However, "relief under *Bivens* does not encompass injunctive and declaratory relief where, as here, the equitable relief sought requires official government action." *Solida v. McKelvey*, 820 F.3d 1090, 1093 (9th Cir. 2016). Thus, this Court finds special factors counseling hesitation in expanding *Bivens* to the case at hand.

### 4. *Remaining Defendants' Under Fifth Claim*

Moreover, the Group A Plaintiffs bring this *Bivens* claim against all Defendants in their official capacity. (Doc. No. 66-1 ¶ 127.) However, *Bivens* claims only provide a remedy against officials in their individual capacity. *See Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities."). "By definition, *Bivens* suits are individual capacity suits and thus cannot enjoin official government action." *Solida*, 820 F.3d at 1094. Thus, the Fifth Claim is **DISMISSED WITH PREJUDICE** in its entirety against both Individual Defendants in their individual capacities and all Defendants in their official capacities.

### B. Plaintiffs' Seventh Claim Under the Fourteenth Amendment is Inapplicable Here

Plaintiffs contend both the Individual and non-Individual Defendants violated Plaintiffs' equal protection rights under both the Fourteenth Amendment and the Indian Civil Rights Act, 25 U.S.C. § 1302. (Doc. No. 62 ¶ 142.) However, the Fourteenth Amendment only applies to State actions. *Hall v. Mueller*, 84 Fed. App'x 814, at *815–16 (9th Cir. 2003). Because Individual Defendants are federal employees acting under color

of federal law, the Fourteenth Amendment is inapplicable to them. Also, because the non-Individual Defendants (the USA and the Dept. of Interior) are federal government entities, the Fourteenth Amendment does not apply. *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543 n.21 (1987) ("The Fourteenth Amendment applies to actions by a State."). Finally, the Indian Civil Rights Act is similarly inapplicable because it expressly applies only to "Indian tribe[s] in exercising powers of self-government[.]" 25 U.S.C. § 1302.

The Court notes any Equal Protection violation against the federal government and/or its employees can only be brought under the Fifth Amendment, however, Plaintiffs failed to allege such a violation. Thus, the Court **DISMISSES WITH PREJUDICE** any equal protection claim under the Fourteenth Amendment. However, the Court **GRANTS LEAVE TO AMEND** to allege an equal protection claim under the Fifth Amendment.

### C. Plaintiffs' Eleventh Claim for Conspiracy to Interfere with Civil Rights Does Not Warrant a *Bivens* Remedy

Plaintiffs claim Individual Defendants "conspired to deny Plaintiffs their rightful inheritance" of the San Pasqual land. (Doc. No. 62 ¶ 192.) However, Plaintiffs fail to state specific actions Individual Defendants committed in furtherance of a conspiracy, and rather make conclusory statements. (*See generally id.* ¶¶ 188–205.) Moreover, Plaintiffs' claim for conspiracy presents a "new *Bivens* context" not encompassed by the Supreme Court's three *Bivens* cases. Plaintiffs contend there are no "special factors" to cause this Court hesitation in applying a *Bivens* remedy here "because there is an absence of affirmative action by Congress to provide a substitute for recovering money damages for the Defendants' constitutional violations." (*Id.* ¶ 190.) However, Plaintiffs' Eleventh claim raises similar concerns as their Fifth claim, which could be further addressed under the APA. Furthermore, Plaintiffs' claims against the Individual Defendants are predominantly conclusory allegations that do not warrant a *Bivens* remedy here. (*See generally id.* ¶¶ 192–205.) For example, Plaintiffs assert that Defendants "conspired to deny Plaintiffs their rightful inheritance" (*id.* ¶ 192); "conspired to interfere with Plaintiffs' civil rights" (*id.* ¶

196); and "[i]n furtherance of their conspiracy . . . exceeded their authority by illegally construing the statutory language of 25 C.F.R. 48[,]" (*id.* ¶ 197). Plaintiffs fail to plead any factual allegations supporting the existence, or plausible existence, of a conspiracy.

Additionally, Plaintiffs' allegations against Individual Defendant Moore in their Eleventh claim relies upon vicarious or successor liability: "Defendants had full knowledge that their predecessors knew non-San Pasqual blood persons were occupying San Pasqual land[.]" (*Id.* ¶ 192.) However, "*Bivens* liability is premised on proof of direct personal responsibility." *See Pellegrino v. U.S.*, 73 F.3d 934, 936 (9th Cir. 1996). Thus, Individual Defendant Moore may not be held liable for actions allegedly committed by others.

### D. Plaintiffs' Alternate Eleventh Claim for Conspiracy to Interfere with Civil Rights Under 42 U.S.C. § 1981

Plaintiffs additionally pursue their conspiracy claim under 42 U.S.C. § 1981. (Doc. No. 62 ¶ 206.) Section 1983 specifically provides a remedy for alleged violations of § 1981 against those officials acting "under color of any statute, ordinance, regulation, custom, or usage, of any *State or Territory or the District of Columbia*." (emphasis added). 42 U.S.C. § 1983; s*ee also Cerrato v. San Francisco Cmty. College Dist.*, 26 F.3d 968, 972 (9th Cir. 1994). Because Individual Defendants acted under color of federal law, this action is inapplicable to Individual Defendants.

Moreover, "[t]o state a conspiracy claim under § 1983, a plaintiff must show (1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional deprivation." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1217 (S.D. Cal. 2012). However, "conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.* (quoting *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.3d 266, 268 (9th Cir. 1982)) (internal quotations omitted).

Here, Plaintiffs have failed to show any agreement between Individual Defendants to deprive Plaintiffs of their tribal benefits. Plaintiffs offer only conclusory assertions of Individual Defendants' alleged conspiracy. (*See* Doc. No. 62 ¶¶ 192, 196, 197, 201, 203.)

Next, Plaintiffs have not pled any overt acts in furtherance of this conspiracy, merely stating Individual Defendants "did nothing to protect Plaintiffs' rights and heritage[,]" (*id.* ¶ 194), "allowed this situation to continue, allowing the non-San Pasqual blood persons to exert themselves," (*id.* ¶ 195), and "exceeded their authority by illegally construing [] statutory language" (*id.* ¶ 197).

Therefore, Individual Defendants' motion to dismiss the Eleventh Cause of Action is **GRANTED**.

### E. Individual Defendants Dutschke and Moore Have Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A government official's actions or inactions violate "clearly established" law when the constitutional right is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (internal citations omitted).

Regarding the first prong of the qualified immunity analysis, Plaintiffs have sufficiently pled at this stage that Individual Defendants violated Plaintiffs' Fifth Amendment Procedural Due Process rights. However, the statutes which Plaintiffs further rely upon (25 C.F.R. §§ 48.5–48.10) were removed from the Code of Federal Regulations in 1996, nine years before the alleged violations occurred, though they are incorporated into the Band's tribal law. *See Alto v. Black*, 738 F.3d 1111, 1116 (9th Cir. 2013); *see also* Enrollment of Indians of the San Pasqual Band of Mission Indians in California, 52 Fed. Reg. 31391–01 (Aug. 20, 1987) (redesignating the 1960 Regulations from 25 C.F.R. Part 48 to 25 C.F.R. Part 76); Enrollment of Indians; Removal of Regulations, 61 Fed. Reg. 27780–01 (June 3, 1996) (removing Part 76). Thus, Individual Defendants have not violated a statutory right.

Moving to the second prong of the analysis, Plaintiffs fail to allege their statutory and constitutional rights were clearly established at the time of Individual Defendants' actions or inactions. (Doc. No. 79 at 14.) Plaintiffs must point to "existing precedent [that has] placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. However, Plaintiffs again repeat legal conclusions throughout their opposition without providing specific examples of existing case law or facts to support their proposition. (Doc. No. 79 at 12–15.) For example, Plaintiffs argue the facts "clearly show" that Individual Defendants' actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known,'" but fail to specify what those rights were. (*Id.* at 12.) Plaintiffs also decide Individual Defendants' actions were unreasonable and thus violated clearly established authority, but again, Plaintiffs do not articulate any legal basis for their conclusion the actions were unreasonable or what right was clearly established. (*Id.* at 13 ("Qualified immunity only protects reasonable official actions. The actions taken by DUTSCHKE and MOORE violated 'clearly established' statutory and constitutional rules. Therefore, their actions were not reasonable official actions.").) In another example, Plaintiffs provide that "[n]either DUTSCHKE's nor MOORE's decisions as pled in plaintiffs' TAC were or are reasonable." (*Id.* at 14.) However, conclusory assertions of law do not suffice.

Because Plaintiffs have not offered any preceding case or judicial opinion that a federal official's failure to notify tribal enrollment applicants of a denial is a "clearly established" violation of the Fifth Amendment Due Process Clause, this Court finds that Individual Defendants Dutschke and Moore have qualified immunity, and thus **DISMISS** them as defendants in their individual capacities.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES** Defendants Dutschke and Moore in their individual capacities. (Doc. No. 66.)

Additionally, the Court **DISMISSES WITH PREJUDICE** the following claims:

1. The Fifth Claim for Violation of Civil Rights – Due Process under *Bivens* because the Court finds Plaintiffs failed to state a *Bivens* action against Individual Defendants and cannot bring a *Bivens* claim against Defendants in their official capacity; and
2. The Eleventh claim for Conspiracy to Interfere with Civil Rights under *Bivens* brought under both *Bivens* and alternatively under 42 U.S.C. § 1981 because Plaintiffs failed to state a claim.

However, the Court **DISMISSES WITH LEAVE TO AMEND** the following claim.

1. The Seventh Claim for Violation of Civil Rights – Equal Protection under the Fourteenth Amendment because a claim under the Fourteenth Amendment can only be brought against the States.

The scope of Plaintiffs' leave to amend will be determined in accordance with the Court's forthcoming order on the second motion to dismiss, (Doc. No. 68). Thus, a date to amend the complaint will be provided in that Order.

The remaining Defendants are as follows:

1. Amy Dutschke and Javin Moore, in their official capacity;
2. Michael Black and Weldon Loudermilk, in their official capacity;
3. The United States of America; and
4. The Department of the Interior.

The remaining causes of actions are as follows:

1. Group A Plaintiffs' First Claim under the APA against Defendants Dutschke, Moore, Zinke, Black, and Loudermilk, in their official capacities;
2. Group B Plaintiffs' Second Claim under the APA against Zinke, Black, and Loudermilk, in their official capacities;
3. Group A Plaintiffs' Third Claim for Declaratory Relief, or in the alternative, Mandamus, against all Defendants, in their official capacities;
4. Group A Plaintiffs' Fourth Claim for unconstitutional delegation of authority against Dutschke, Moore, Zinke, Black, and Laudermilk, in their official capacities; and Group B Plaintiffs against all Defendants, in their official capacities;
5. Group B Plaintiffs' Sixth Claim against all Defendants in their official capacities for violation of civil rights and due process;
6. Group A and Group B Plaintiffs' Eighth Claim for breach of statutory fiduciary duty against all Defendants in their official capacity;

13

7. Group A Plaintiffs' Ninth Claim for denial of tribal property rights against all Defendants in their official capacity; and
8. Group A Plaintiffs' Tenth Claim against all Defendants in their official capacity for unconstitutional diminution of tribal land rights.

**IT IS SO ORDERED.**

Dated: July 23, 2019

Hon. Anthony J. Battaglia
United States District Judge