UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY ALEGRE, et al.,<br>　　　　　　　Plaintiffs,<br>v.<br>UNITED STATES OF AMERICA, et al.,<br>　　　　　　　Defendants. | Case No.: 16-cv-2442-AJB-KSC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>**(Doc. No. 110)** |

Presently before the Court is Defendants United States of America, Department of the Interior, and Individual Defendants Michael Black, Weldon Loudermilk, Amy Dutschke, and Javin Moore's (sued in their official capacities) (collectively, "Federal Defendants") motion to dismiss for lack of jurisdiction Plaintiffs' third cause of action in Plaintiffs' Fourth Amended Complaint. (Doc. No. 110.) The Court held a hearing on Federal Defendants' motion on January 9, 2020. (Doc. No. 120.) For the reasons set forth below, the Court **GRANTS** Federal Defendants' motion to dismiss, and **DISMISSES** Plaintiffs' third cause of action from the Fourth Amended Complaint **WITHOUT LEAVE TO AMEND**.

I.  **BACKGROUND**

The following facts are taken from the Fourth Amended Complaint and construed as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013). The facts of this case have been thoroughly

detailed in previous documents, including this Court's previous order granting in part and denying in part Federal Defendants' motion to dismiss. (*See* Doc. No. 68.) Although the complaint has been amended several times, the core facts remain the same. Plaintiffs are the descendants of Jose Juan Martinez, Guadalupe Martinez, and their daughter Modesta Martinez Contreras (collectively, "Martinez Ancestors"). (Fourth Amended Complaint ¶¶ 12–19.) Plaintiffs are split into Groups A and B. (*Id.*) Group A Plaintiffs include Plaintiffs who are: residents of San Diego County, "direct lineal descendants of Jose Juan Martinez and Guadalupe Martinez," and "direct lineal descendants of Modesta Contreras." (*Id.* ¶ 15.) Group A Plaintiffs are enrolled in the San Pasqual Band of Mission Indians ("the Band") but are not federally recognized as Band members by the Bureau of Indian Affairs ("BIA"). (*Id.*) Group B Plaintiffs are also San Diego County residents, are enrolled in the Band, and are federally recognized by the BIA as Band members. (*Id.* ¶ 18.)

Group A Plaintiffs assert each of the Martinez Ancestors were full blood San Pasqual Indians. (*Id.* ¶ 28.) In 2005, Group A Plaintiffs submitted their applications to the Enrollment Committee for enrollment with the Band. (*Id.* ¶ 29.) The Enrollment Committee unanimously voted that Plaintiffs had established they were qualified for enrollment. (*Id.*) This determination "was predicated on a finding that Plaintiffs' ancestor Modesta's blood degree should be increased from ¾ to 4/4" because "both of Modesta's parents were full blood San Pasqual Indians, based upon the totality of the documentary evidence." (*Id.* ¶ 30.) The Band's General Council then unanimously agreed with the Enrollment Committee on April 10, 2005. (*Id.* ¶ 30.) Later, on September 12, 2005, the Band's Business Committee concurred with both the General Council and the Enrollment Committee and sent its findings to former Superintendent of the Southern California Agency, James Fletcher ("Fletcher"). (*Id.* ¶ 31.) Group A Plaintiffs allege that under federal law and the Tribal Constitution, they were eligible to be enrolled and federal recognized as San Pasqual Indians, and that Federal Defendants were required to accept the Tribal recommendations unless the recommendation was "clearly erroneous." (*Id.*)

On September 22, 2005, the Enrollment Committee—in a separate proceeding—requested the BIA increase Modesta's blood degree from 3/4 to 4/4-degree San Pasqual blood. (*Id.* ¶ 32.) Three months later, on December 8, 2005, Fletcher sent Individual Defendant Amy Dutschke ("Dutschke") a letter, stating "the preponderance of the evidence does not sufficiently demonstrate that Modesta [] is full blood[,]" (*id.* ¶ 33) to which Dutschke concurred in a letter on April 7, 2006, (*id.* ¶¶ 34–35). However, Plaintiffs were never given written notice of either Fletcher or Dutschke's findings. (*Id.* ¶ 35.) Plaintiffs eventually submitted FOIA requests to determine the status of their applications, to which they received responses on October 1, 2014, and May 27, 2015. (*Id.* ¶ 44). It was at this time Plaintiffs learned of Dutschke's April 7, 2006 negative determination of Plaintiffs' enrollment requests. (*Id.*)

Plaintiffs filed their appeal with Dutschke in January and April 2015. (*Id.* ¶ 45.) Around July 25, 2015, Defendant Moore issued a letter stating that the BIA no longer had the original applications to adjudicate the enrollment, and the April 7, 2006 letter was final for the Department, exhausting Plaintiffs' administrative remedies. (*Id.* ¶ 45.) On May 6, 2016, Plaintiffs resubmitted their appeal, but did not receive a response from Federal Defendants. (*Id.* ¶¶ 46–47.)

Plaintiffs filed suit, alleging that Federal Defendants' failure to add the Group A Plaintiffs to the Band and instead enrolling non-San Pasqual individuals into the Tribe constituted a violation of Group A Plaintiffs' Fifth Amendment right to equal protection under the law. (*Id.* ¶ 49.) In addition, Plaintiffs' FAC alleges "ten specific acts" which demonstrate Defendants violated the Equal Protection Clause of the Fifth Amendment by:

- enrolling non-San Pasqual persons into the Band;
- enrolling Group A Plaintiffs' cousins into the Band, but not Plaintiffs;
- holding Plaintiffs to a higher blood quantity standard than other members of the Band;
- denying Group A Plaintiffs notice of BIA's conclusions and an opportunity to submit additional documents to support their application for membership;
- targeting and discriminating Plaintiffs;

3

- using the wrong standard of review when considering Modesta's blood degree;
- failing to consider Plaintiffs' total Indian Blood when determining whether to approve enrollment applications into the Band, as they had for others;
- enacting former 25 C.F.R. § 48.5(f);
- manipulating facts and documents in order to allow certain persons to inappropriately enroll in the Band, including inserting the words "blood of the Band" into clauses of 25 C.F.R. Part 45, and then misinterpreting that phrase to allow total Indian Blood to be used to enroll certain persons into the Band; and
- ignoring the Band's Enrollment Committee's objections to the enrollment of certain persons into the Band.

(*Id.* ¶¶ 125–38.)

## II.  PROCEDURAL HISTORY

Plaintiffs' Complaint was first filed in September 28, 2016. (Doc. No. 1.) After several rounds of amendments, Plaintiffs are now on their Fourth Amended Complaint. (Doc. No. 105.) The remaining claims in the Fourth Amended Complaint are: (1) an Administrative Procedures Act claim, (2) a claim seeking declaratory relief or a writ of mandate, and (3) a claim alleging violation of Plaintiffs' Fifth Amendment equal protection rights. (Doc. No. 105.) On October 7, 2019, Federal Defendants filed a motion to dismiss Plaintiffs' third claim for relief for lack of jurisdiction. (Doc. No. 110.) Plaintiffs opposed, (Doc. No. 116) and Federal Defendants replied, (Doc. No. 119). This order follows.

## III.  LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1) Dismissal for Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Accordingly, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). In civil cases, federal courts have subject matter jurisdiction over only those cases where either diversity jurisdiction or federal question jurisdiction exists. *See Peralta v. Hispanic*

*Bus., Inc.*, 419 F.3d 1064, 1068–69 (9th Cir. 2005). Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332. Federal question jurisdiction exists in cases that arise under federal law. *Id.* § 1331.

Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the party asserts a factual challenge, the court may consider extrinsic evidence demonstrating or refuting the existence of jurisdiction without converting the motion to dismiss into a motion for summary judgment. *Id.* The party asserting subject matter jurisdiction has the burden of persuasion for establishing it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).

**B.    Sovereign Immunity**

Generally, the United States and its agencies may not be sued in federal court unless Congress has waived sovereign immunity. If Congress has not waived the federal government's immunity for a particular claim, courts lack jurisdiction over that claim and must dismiss it. *United States v. Dalm*, 494 U.S. 596, 608 (1990). "A mere assertion that jurisdictional statutes apply does not suffice to confer jurisdiction when, as in this case, the government did not waive its immunity." *Hughes v. United States*, 953 F.2d 531, 539 n.5 (9th Cir. 1992). Sections 1331, 1353, 1361, and 1362 of Title 28 do not contain waivers of sovereign immunity. *See* 28 U.S.C. § 1353. Sections 28 U.S.C. §§ 1331 and 1337 are statutes of general jurisdiction, but they do not waive the United States' sovereign immunity. Any waiver "must be construed strictly in favor of the sovereign" and "not enlarged beyond what the language requires." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992).

//

## IV. DISCUSSION

Federal Defendants move to dismiss the third cause of action in Plaintiffs' Fourth Amended Complaint based on one ground—sovereign immunity. (Doc. No. 110 at 4.) Federal Defendants argue that Plaintiffs do not identify a basis for waiver of sovereign immunity. (*Id.* at 4–5.) According to Federal Defendants, although Plaintiffs assert that their civil rights claim are brought pursuant to 28 U.S.C. § 1343 and the Fifth Amendment, neither provides a basis for the waiver of sovereign immunity. (*Id.* at 4.) In response, Plaintiffs lists a host of reasons why sovereign immunity should be waived. The Court will address each ground in turn.

### A. 25 C.F.R. § 48

First, Plaintiffs argue the United States waived sovereign immunity because it "created 25 C.F.R. §48, advised the San Pasqual Tribe to include §48 into its Constitution and then approved the Tribal Constitution in 1971." (Doc. No. 116 at 17.) Because the United States allegedly inserted itself "into the San Pasqual Constitution, the United States has waived its sovereign immunity concerning any constitutional violations of the San Pasqual Constitution and/or 25 C.F.R. §48." (*Id.* at 11.)

As pointed out by Federal Defendants, there are several problems with this argument. As background, the Band's Constitution gives the Secretary of the Interior final authority over tribal enrollment decisions. *See Alto v. Black*, 738 F.3d 1111, 1116 (9th Cir. 2013). The Band's Constitution also "expressly incorporates federal regulations, adopted in 1960 and formerly codified at 25 C.F.R. §§ 48.1–48.15 ("the 1960 Regulations"), which addressed tribal enrollment criteria, the process for completing an initial membership roll, the procedures for keeping the membership roll current, and the purposes for which the roll was to be used." *Id.*; *see also* 25 Fed. Reg. 1829 (Mar. 2, 1960) (codified at 25 C.F.R. pt. 48) (providing the content of the 1960 Regulations).

But the 1960 Regulations are of no help to Plaintiffs. First, the 1960 Regulations were removed from the Code in 1996, and so this fact alone renders Plaintiffs' argument for waiver of sovereign immunity ineffective. *See Alto*, 738 F.3d at 1116 n.1. Second,

Plaintiffs fail to specify—and the Court is not aware of—which portions of the obsolete 1960 Regulations provide a basis for the waiver of sovereign immunity. *See Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983) ("The party who sues the United States bears the burden of pointing to such an unequivocal waiver of immunity."). Plaintiffs cannot simply proclaim that the Band adopted the former 1960 Regulations into their Constitution without specifying where in the 1960 Regulations the United States contemplated a waiver of sovereign immunity. Indeed, "[a] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980). According, as Plaintiffs have not shown where in the now-removed regulations a sovereign immunity waiver exists, Plaintiffs may not rely on 25 C.F.R. § 48.

### B.     Non-Statutory Review

Also unconvincing is Plaintiffs' argument that "non-statutory review" should apply. Plaintiffs argue that the Court should utilize this doctrine because (1) Plaintiffs are indigenous persons, (2) the issues in the case are unique, (3) the Constitution demands that Plaintiffs be made whole, and (4) there is a special relationship between the San Pasqual Indians and the United States. (Doc. No. 116 at 20.)

However, case law does not support Plaintiffs' position. For example, the Ninth Circuit has held that 5 U.S.C. § 702 does waive sovereign immunity in non-statutory review actions for non-monetary relief brought under 28 U.S.C. § 1331. *See Clinton v. Babbitt*, 180 F.3d 1081, 1087 (9th Cir. 1999). But here, Plaintiffs are clearly seeking monetary relief in their Fifth Amendment equal protection claim. Accordingly, the non-statutory review cannot apply to waive sovereign immunity.

### C.     The Ultra Vires Doctrine

Next, Plaintiffs contend that Federal Defendants' negative determination of Plaintiffs' enrollment requests, in addition to their failure to provide notice to Plaintiffs demonstrated an ultra vires act beyond the scope of Federal Defendants' delegated authority. (Doc. No. 116 at 21.) The Court rejects Plaintiffs' arguments for at least two reasons.

First, the mere allegation that an official acted wrongfully "does not establish that the officer, in committing that wrong, is not exercising the powers delegated to him by the sovereign." *United Tribe of Shawnee Indians v. U.S.*, 253 F.3d 543, 548–549 (10th Cir. 2001); *Robinson v. Salazar*, 885 F. Supp. 2d 1002, 1028 (E.D. Cal. 2012), aff'd sub nom. *Robinson v. Jewell*, 790 F.3d 910 (9th Cir. 2015). The ultra vires doctrine is grounded on "the officer's lack of delegated power." *Al-Nashiri v. MacDonald*, 741 F.3d 1002, 1008 (9th Cir. 2013). An officer acts ultra vires when the officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. *Robinson*, 885 F. Supp. 2d at 1029. "A claim of error in the exercise of that power is therefore not sufficient." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690 (1949) (holding that under the ultra vires doctrine, a claim may be made only against the official and not against the United States, as the official was acting individually and not in his capacity as a government agent).

At best, Plaintiffs' claim is that the government officials acted wrongfully or erroneously by rejecting Plaintiffs' enrollment request, and by failing to provide notice to Plaintiffs. The allegations at issue here are not claims that any of the Individual Defendants acted or failed to act in excess of their statutory authority. *Dalton v. Specter*, 511 U.S. 462, 472 (1994) (executive actions in excess of statutory authority are not ipso facto unconstitutional). Indeed, the allegations do not suggest that Individual Defendants acted outside the scope of their duties.

Secondly, in any event, the doctrine of ultra vires does not apply to situations in which claimants seek monetary relief against the government officials. *See E.V. v. Robinson*, 906 F.3d 1082, 1090–91 (9th Cir. 2018) (holding that the ultra vires doctrine "does not apply in suits for damages."). That is the case here and as such, the ultra vires doctrine does not help waive sovereign immunity.

//
//
//

### D. The Tucker Acts

Plaintiffs also assert that the Tucker Act, 28 U.S.C. § 1491,[1] the Little Tucker Act, 28 U.S.C. § 1346,[2] and the Indian Tucker Act, 28 U.S.C. § 1505,[3] ("the Tucker Acts") all provide a basis for the waiver of sovereign immunity. (Doc. No. 116 at 22.) Specifically, Plaintiffs state, "the historical guardian-ward relationship between the federal government and indigenous peoples also gives rise to a special cause of action" and that the United States government "created many implied contracts and written treaties with the San Pasqual Indians." (*Id.* at 24.)

In rebuttal, Federal Defendants argue that the Tucker Act and the Indian Tucker Act confer jurisdiction exclusively to the Court of Federal Claims. (Doc. No. 119 at 4.) However, "[a] claim that falls under the Tucker Act does not necessarily have to be brought in the Court of Federal Claims." *Bowen v. Massachusetts*, 487 U.S. 879, 910 n. 48 (1988). The Tucker Act's grant of jurisdiction to the Court of Federal Claims is referred to as "exclusive," but "that court's jurisdiction is 'exclusive' only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court." *Id.* "[J]urisdiction under the Tucker Act is not exclusive where other statutes independently confer jurisdiction and waive sovereign immunity.'" *McGuire v.*

---

[1] 28 U.S.C. § 1491(a)(1) grants jurisdiction to the United States Court of Federal Claims for suits "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

[2] 28 U.S.C. § 1346(a)(2) grants concurrent jurisdiction to the Court of Federal Claims and district courts for a "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

[3] 28 U.S.C. § 1505 grants jurisdiction to the Court of Federal Claims for suits "against the United States accruing after August 13, 1946, in favor of any tribe, band, or other identifiable group of American Indians residing within the territorial limits of the United States or Alaska whenever such claim is one arising under the Constitution, laws or treaties of the United States, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band or group."

*United States*, 550 F.3d 903, 911 (9th Cir. 2008) (quoting *In re Liberty Constr.*, 9 F.3d 800, 801 (9th Cir. 1993)). Furthermore, as Federal Defendants point out, the Tucker Act and the Little Tucker Act do not themselves "creat[e] substantive rights," but "are simply jurisdictional provisions that operate to waive sovereign immunity for claims premised on ***other sources of law***." *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009) (emphasis added). Indeed, the Tucker Acts "do[] not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). A substantive right must be found in some other source of law, such as "the Constitution, or any Act of Congress, or any regulation of an executive department." 28 U.S.C. § 1491.

Therefore, the pertinent question is whether there exists "other sources of law" sufficient to confer jurisdiction to the district courts. Here, Plaintiffs' third cause of action is premised on the Fifth Amendment. And critically, the Ninth Circuit has held that district courts lack jurisdiction to hear claims for monetary relief based on the due process clause of the Fifth Amendment. *See Munns v. Kerry*, 782 F.3d 402, 413 (9th Cir. 2015) ("The only possible waivers of sovereign immunity that the plaintiffs allege involve the Due Process and Takings Clauses of the Fifth Amendment. But these provisions are not general waivers of sovereign immunity and do not establish jurisdiction in the district courts over monetary claims such as those brought by the plaintiffs."). Accordingly, the Fifth Amendment due process clause does not provide a basis under the Tucker Acts to waive sovereign immunity.

The result is also no different for Individual Defendants acting in their official capacity. "An action against an officer, operating in his or her official capacity as a United States agent, operates as a claim against the United States." *Solida v. McKelvey*, 820 F.3d 1090, 1095 (9th Cir. 2016). Indeed, suits against "federal officials in their official capacities seeking damages are ipso facto against the government for purposes of sovereign immunity." *Robinson*, 906 F.3d at 1095. Accordingly, the Tucker Acts cannot salvage Plaintiffs' Fifth Amendment claim for monetary damages against federal officers.

Neither is Plaintiffs' claim of an implied contract convincing. Plaintiffs state that the

10

United States government has created "many implied contracts and written treaties" with the San Pasqual Indians. (Doc. No. 116 at 24.) The Tucker Act's grant of jurisdiction to hear and determine claims against the government founded upon any "express or implied" contract with the United States extends only to contracts either express or implied in fact, not to claims on contracts implied in law. *Hercules Inc. v. United States*, 516 U.S. 417, 417 (1996). But Plaintiffs do not provide any factual detail as to what contract specifically was formed between Plaintiffs—individuals seeking recognition in the Band—and the United States government. Thus, without any details about an alleged contract between Plaintiffs and the United States specifically, the Court may not imply such a contract.

### E. Trust Relationship

Plaintiffs also contend that the "historical guardian-ward relationship between the federal government and indigenous peoples also gives rise to a special cause of action, which is presumptively redressable in money damages." (Doc. No. 116 at 27.) Plaintiffs rely on *United States v. Navajo Nation*, for the proposition that once a fiduciary duty has been established between the plaintiff and the United States from a pertinent statute, the availability of damages may be inferred. (*Id.* at 29 (citing *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003)).

In *Navajo Nation*, the Supreme Court explained that, to state a claim cognizable under the Indian Tucker Act, a tribe must identify a substantive source of law that establishes specific fiduciary duties and allege that the government has failed to perform those duties. *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003). If that threshold is passed, the court must then determine whether the relevant source of substantive law "can fairly be interpreted as mandating compensation for damages sustained as a result of a breach of the duties [the governing law] impose[s]." *Testan*, 424 U.S. at 488. The Supreme Court has stated that although "the undisputed existence of a general trust relationship between the United States and the Indian people" can "reinforc[e]" the conclusion that the relevant statute or regulation imposes fiduciary duties, "that relationship alone is insufficient to support jurisdiction under the Indian Tucker Act." *Navajo Nation*, 537 U.S.

at 506. "Instead, the analysis must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions." *Id.*

Here, Plaintiffs point solely to the Fifth Amendment and 25 C.F.R. § 48 as the source of law creating specific fiduciary duties to which monetary damages may be inferred. Even if Plaintiffs could clear the hurdle of jurisdiction, as explained above, the Ninth Circuit has already held that the Fifth Amendment does not provide for monetary relief, and the Fifth Amendment due process clause may not interpreted as mandating monetary damages. *Munns*, 782 F.3d at 413. And as already explicated above, 25 C.F.R. § 48 is no longer in existence and is of no help to Plaintiffs in their argument that the regulation demonstrates fiduciary obligations. *Alto*, 738 F.3d at 1116 n.1. Thus, Plaintiffs' efforts to waive sovereign immunity on this basis must be rejected.

### F. Takings Clause

Next, Plaintiffs also provide the takings clause in the Fifth Amendment as an attempt to show a waiver of sovereign immunity. (Doc. No. 116 at 30.) But Plaintiffs' third cause of action is clearly not alleged in the FAC to be a Fifth Amendment takings claim. (FAC at 30.) "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014). Because Plaintiffs allege their third cause of action as a Fifth Amendment equal protection claim—and not a Fifth Amendment takings claim—Plaintiffs' taking clause argument must also fail.

### G. Sued and be Sued

Lastly, Plaintiffs maintain that Congress has inserted "sue and be sued" clauses into many of its agencies and one such agency is the Department of the Interior through the Secretary of the Interior. (Doc. No. 116 at 34); *Thacker v. Tennessee Valley Auth.*, 139 S. Ct. 1435, 1440 (2019) ("[S]ue-and-be-sued clause serves to waive sovereign immunity otherwise belonging to an agency of the Federal Government."). However, Plaintiffs fail to support its contention with any relevant case law demonstrating that the Department of the Interior does indeed maintain "sue and be sued" status. Thus, the Court must also reject

this argument as well.

## V. CONCLUSION

In past orders, the Court has explicitly instructed Plaintiffs to identify the basis for the alleged waiver of sovereign immunity as to each claim. (*See, e.g.*, Doc. No. 59 (warning Plaintiffs to "state the basis for the Court's subject matter jurisdiction and Defendants' waiver of sovereign immunity as to each cause of action. Failure to comply with Rule 8(a) may result in dismissal with prejudice under Rule 41(b).") Plaintiffs have once again failed to do so. Thus, for the reasons stated herein, the Court **GRANTS** Federal Defendants' motion to dismiss Plaintiffs' third cause of action. Plaintiffs' third cause of action is **DISMISSED WITHOUT LEAVE TO AMEND**. Additionally, Plaintiffs oral motion to bifurcate is additionally **DENIED**.

**IT IS SO ORDERED.**

Dated:  August 12, 2020

Hon. Anthony J. Battaglia
United States District Judge