UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY ALEGRE, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br>　　　　　　　　　　Defendants. | Case No.: 16-cv-2442-AJB-KSC<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; and**<br><br>**(2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Doc. Nos. 176 & 183)** |

　　　　Presently before the Court is (1) Cindy Alegre, et. al.'s ("Plaintiffs") Motion for Summary Judgment and/or Summary Adjudication of Facts (Doc. No. 176); and (2) Defendants United States of America, Department of the Interior, and Individual Defendants Sally Jewell, Lawrence Roberts, and Michael Black's (sued in their official capacities) (collectively, "Defendants") motion for summary judgment. (Doc. No. 183.) The motions have been fully briefed. (Doc. Nos. 189, 190, 186, & 193.) For the reasons set forth below, the Court **GRANTS** Defendants' motion for summary judgment, and **DENIES** Plaintiffs' motion for summary judgment.

///

## I. BACKGROUND

The facts of this case have been thoroughly detailed in previous documents, including this Court's previous order granting Defendants' motion to dismiss Plaintiffs' third cause of action from the Fourth Amended Complaint ("FAC"). (*See* Doc. No. 121.) Although the complaint has been amended several times, the core facts remain the same. Plaintiffs are the descendants of Jose Juan Martinez, Guadalupe Martinez, and their daughter Modesta Martinez Contreras (collectively, "Martinez Ancestors"). (FAC, Doc. No. 105, ¶ 12–19.) Plaintiffs include those who are residents of San Diego County, "direct lineal descendants of Jose Juan Martinez and Guadalupe Martinez," and "direct lineal descendants of Modesta Contreras." (*Id.* ¶ 15.) Plaintiffs are enrolled in the San Pasqual Band of Mission Indians ("Band") but are not federally recognized as Band members by the Bureau of Indian Affairs ("BIA"). (*Id.*)

Plaintiffs assert each of the Martinez Ancestors were full blood San Pasqual Indians. (*Id.* ¶ 28.) In 2005, Plaintiffs submitted their applications to the Enrollment Committee for enrollment with the Band. (*Id.* ¶ 29.) The Enrollment Committee unanimously voted that Plaintiffs had established they were qualified for enrollment. (*Id.*) This determination "was predicated on a finding that Plaintiffs' ancestor Modesta's blood degree should be increased from ¾ to 4/4" because "both of Modesta's parents were full blood San Pasqual Indians, based upon the totality of the documentary evidence." (*Id.* ¶ 30.) The Band's General Council then unanimously agreed with the Enrollment Committee on April 10, 2005. (*Id.* ¶ 30.) Later, on September 12, 2005, the Band's Business Committee concurred with both the General Council and the Enrollment Committee and sent its findings to former Superintendent of the BIA's Southern California Agency, James Fletcher ("Fletcher"). (*Id.* ¶ 31.) Plaintiffs allege that under federal law and the Tribal Constitution, they were eligible to be enrolled and federal recognized as San Pasqual Indians, and that Defendants were required to accept the Tribal recommendations unless the recommendation was "clearly erroneous." (*Id.*)

///

On September 22, 2005, the Enrollment Committee—in a separate proceeding—requested the BIA to increase Modesta's blood degree from 3/4 to 4/4 degree San Pasqual blood. (*Id.* ¶ 32.) Three months later, on December 8, 2005, Fletcher sent former Director of the BIA's Pacific Regional Office Amy Dutschke ("Dutschke") a letter, stating "the preponderance of the evidence does not sufficiently demonstrate that Modesta [] is full blood[,]" (*id.* ¶ 33), to which Dutschke concurred in a letter on April 7, 2006, (*id.* ¶ 34–35). However, Plaintiffs allegedly never received written notice of either Fletcher or Dutschke's findings. (*Id.* ¶ 35.)

In 2014, Plaintiffs submitted FOIA requests to determine the status of their applications, to which they received responses on October 1, 2014, and May 27, 2015. (*Id.* ¶ 44). It was at this time Plaintiffs learned of Dutschke's April 7, 2006 negative determination of Plaintiffs' enrollment requests. (*Id.*)

Plaintiffs filed their appeal with Dutschke in January and April 2015. (*Id.* ¶ 45.) Around July 25, 2015, former Superintendent of the BIA's Southern California Agency Javin Moore issued a letter stating the BIA no longer had the original applications to adjudicate the enrollment, and the April 7, 2006 letter was final for the Department, exhausting Plaintiffs' administrative remedies. (*Id.* ¶ 45.) On May 6, 2016, Plaintiffs resubmitted their appeal, but did not receive a response from Defendants. (*Id.* ¶ 46–47.)

Plaintiffs filed suit, alleging that Defendants violated the Administrative Procedures Act ("APA") by failing to provide Plaintiffs with legally sufficient notice of their decisions not to increase Modesta's blood degree and negative determination of Plaintiffs' enrollment requests. (*Id.* ¶ 77.) Plaintiffs further assert that Defendants' decisions were arbitrary and capricious. (*Id.*) Moreover, Plaintiffs request this Court to issue an order and/or mandate: (1) directing Defendants to adjudicate Plaintiffs' enrollment applications; and (2) directing Defendants to properly review Plaintiffs' applications for federal recognition in the Band. (*Id.* ¶ 96.)

///

///

## II. PROCEDURAL HISTORY

Plaintiffs' complaint was first filed on September 28, 2016. (Doc. No. 1.) After several rounds of amendments, Plaintiffs are now on their Fourth Amended Complaint. (Doc. No. 105.) Additionally, the claims against Defendants Amy Dutschke and Javin Moore in their individual capacities have been dismissed. (Doc. No. 98.) The remaining claims in the FAC are: (1) an Administrative Procedures Act claim, and (2) a claim seeking declaratory relief or a writ of mandate under the APA. (*Id.*) On September 1, 2021, Plaintiffs filed a motion for summary judgment. (Doc. No. 176.) Defendants opposed (Doc. No. 189), and Plaintiffs replied (Doc. No. 190). Thereafter, on September 10, 2021, Defendants filed a cross-motion for summary judgment. (Doc. No. 183.) Plaintiffs opposed (Doc. No. 186), and Defendants replied (Doc. No. 193). This order follows.

## III. LEGAL STANDARD

The standard of review under the APA is deferential to the agency. Section 706(2) of the APA grants a court the power to set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The scope of judicial review under the "arbitrary and capricious" standard is narrow, and the court is not to substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

Summary judgment under Federal Rule of Civil Procedure 56(a) is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a). Under the APA, the reviewing court does not take evidence or make findings of fact. *Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 443 (7th Cir. 1990). When reviewing administrative action under the APA on a motion for summary judgment, there are no disputed facts that the court must resolve. *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985); *Home Builders Ass'n of N. Cal. v. U. Fish and Wildlife Serv.*, 529 F. Supp. 2d 1110, 1117 (N.D. Cal. 2007). Rather, "the function of the district court is to determine whether or not as a matter of law the evidence in the

administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co.*, 753 F.2d at 769.

"An agency's action is arbitrary and capricious if the agency fails to consider an important aspect of a problem, if the agency offers an explanation for the decision that is contrary to the evidence, if the agency's decision is so implausible that it could not be ascribed to a difference in view or be the product of agency expertise, or if the agency's decision is contrary to the governing law." *Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2004) (citations omitted). "Although [the court's] inquiry must be thorough, the standard of review is highly deferential; the agency's decision is 'entitled to a presumption of regularity,' and [the court] may not substitute [its] judgment for that of the agency." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014).

## IV.   DISCUSSION

Plaintiffs move for summary judgment on both of their claims for relief under the APA. (Doc. Nos. 176, 183.) In their cross motion for summary judgment, Defendants argue that Plaintiffs do not have standing to bring their claims, that the statute of limitations bars Plaintiffs' APA claims, and that regardless, Plaintiffs' claims fail on the merits. (Doc. No. 183.) The Court first addresses the issues of standing and the statute of limitations. Because these issues are dispositive, the Court need not reach the merits of Plaintiffs' claims.

### A.   Administrative Procedures Act

The APA gives federal courts a right to judicial review of all "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see also Alto v. Black*, 738 F.3d 1111, 1117 (9th Cir. 2013). "Federal courts generally may not interfere with tribal enrollment decisions, '[g]iven the often vast gulf between tribal traditions and those with which federal courts are more intimately familiar. . . .'" *Alto*, 738 F.3d at 1122 (quoting *Santa Carla Pueblo v. Martinez*, 436 U.S. 49, 72 n.32 (1978)). However, in limited circumstances, this right extends to matters concerning tribal enrollment. *Id.* at 1123. For instance, and as is the case here, the court may review agency action that "was triggered by the Band's own request, not that of the putative tribal members." *Id.*; *see also*

*Moapa Band of Paiute Indians v. U.S. Dep't of Interior*, 747 F.2d 563, 565–66 (9th Cir. 1984) (applying APA standards to review the Secretary of Interior's ("SOI") recission of a tribal ordinance where the tribal constitution granted the SOI authority to do so).

Here, neither party disputes this Court's right to review the BIA's decisions regarding tribal enrollment. (*See* Doc. Nos. 176 at 10, 183 at 19.) Further, because the Band's Constitution vests in the BIA the authority to determine who may be eligible for tribal enrollment, the Court may review the BIA's agency action here.

In their motion, Plaintiffs assert Defendants violate 5 U.S.C. § 706 by (1) denying Plaintiffs due process of law; (2) relying upon unvetted and unreliable evidence; (3) choosing to ignore relevant information about the Martinez family; and (4) historically denying Plaintiffs their right to due process, resulting in the creation of two bands within the Tribe. (*See* Doc. No. 176.) In their cross-motion for summary judgment, Defendants contend Plaintiffs' APA claims violate the statute of limitations, that Plaintiffs lack standing to challenge BIA's actions, and that regardless, the agency's actions were not arbitrary, capricious, or an abuse of discretion.

### 1.  Whether Plaintiffs Lack Standing

With respect to each claim and each type of relief sought, Plaintiffs must satisfy the injury, causation, and redressability requirements for constitutional standing. Specifically, Plaintiffs must show that (1) they have suffered an "injury in fact" that is concrete and particularized, and also "actual and imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the [Defendants'] challenged action"; and (3) it is likely, as opposed to merely speculative, that "a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Injury-in-fact is satisfied by a showing of "personal injury"—i.e., that the plaintiff has a "personal stake" in the dispute—that is "concrete" and "particularized" as to the plaintiff, and "actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). So long

as the plaintiff has alleged an injury that is actual or imminent, concrete, and particularized to him, the alleged injury need not be significant. *See Animal Legal Def. Fund v. U.S. Dep't of Agriculture*, 223 F. Supp. 3d 1008, 1016 (C.D. Cal. 2016) (quoting binding authority).

The injury alleged must also be "fairly traceable to the challenged action." *Clapper*, 568 U.S. at 409 (quoting *Monsanto*, 561 U.S. at 149). That is, "there must be a causal connection between the injury and the conduct complained of" rather than "injury that results from the independent action of some third party not before the court." *Lujan*, 504 U.S. 555, 560–61 (1992). Finally, the injury must be "redressable by a favorable ruling." *Clapper*, 568 U.S. at 409 (quoting *Monsanto*, 561 U.S. at 149).

Defendants first argue that Plaintiffs have failed to establish their standing to sue pursuant to the APA. Specifically, Defendants assert that because the Band's Enrollment Committee requested the BIA to increase Ms. Contreras' blood degree, rather than Plaintiffs, Plaintiffs may not rest their claim on the legal rights or injuries of third parties. (Doc. No. 183 at 27.) Additionally, Defendants contend that Plaintiffs' claim does not meet the limited exception to third-party claims, as "there was no hinderance to the [Enrollment Committee] protecting its own interests." (*Id.*)

In response, Plaintiffs argue that although they are a third party to the *request* to increase Ms. Contreras' blood degree, they have suffered an injury to themselves and have a personal stake in the outcome under *Flast v. Cohen*, 392 U.S. 83 (1968). (Doc. No. 186 at 22.) Specifically, Plaintiffs assert they have a direct and inseparable relationship between themselves and the blood they inherited from their ancestor, Modesta Martinez Contreras. (*Id.*) As such, they contend they have a personal stake in the outcome of the controversy, including potential benefits derived from becoming a federally recognized member of the Band. (*Id.*)

Defendants' assertion that Plaintiffs lack standing as third parties is misdirected. Although the Enrollment Committee was the party to request the BIA to increase Ms. Contreras' blood degree, it is primarily Plaintiffs' rights, not those of the Enrollment Committee, that is at stake. Defendants cite *United States v. Flores-Villar*, 536 F.3d 990

(9th Cir. 2008), *abrogated on other grounds by Sessions v. Morales-Santana*, 137 S.Ct. 1678 (2017), in support of their contention. However, this case is distinguishable as the defendant there attempted to pursue rights belonging to his father, rather than himself, and no obstacles prevented defendant's father from asserting his own constitutional rights. *Id.* at 998. Similarly, the plaintiff in *Kyung Park v. Holder*, 572 F.3d 619 (9th Cir. 2009), brought a claim asserting violations of her husband's rights. There, the Court found the plaintiff had no standing because nothing in the record indicated that her husband could not protect his own interests. *Id.* at 625. Here, however, Plaintiffs are not pursuing the rights of another party, but rather their own.

Plaintiffs have shown they will suffer a particularized, concrete, and actual or imminent injury to themselves resulting from the denied benefits as a result of Defendants' decision not to increase Modesta's blood degree. *See Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008) (observing that an Article III injury "may be minimal" and that even "'an identifiable trifle' is sufficient to establish standing" so long as the alleged harm affects the plaintiff in a "personal and individualized way" (quoting *Lujan*, 504 U.S. at 560 n.1; *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 932 (9th Cir. 2008))). Plaintiffs have therefore satisfied the injury-in-fact requirement and have standing to bring this suit.

### 2. Whether Plaintiffs' APA Claim Violates the Statue of Limitations

Pursuant to 28 U.S.C. § 2401(a), "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The six-year statute of limitations under § 2401(a) also applies to APA claims. *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 930 (9th Cir. 2013) (citing 28 U.S.C. § 2401(a); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 712–13 (9th Cir. 1991)). Under the APA, the right of action generally accrues at the time the agency action becomes final. *See Wind River Mining Corp.*, 946 F.2d at 715. To be "final" an agency action "must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature." *Bennet v. Spear*, 520

U.S. 154, 177–78 (1997) (internal quotation marks and citation omitted). It must also be an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 178. However, a claim generally accrues under federal law when a party knew or should have known an injury occurred. *Shiny Rock Min. Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir. 1990).

The parties do not dispute that the six-year limitation applies; rather, the crux of the issue is when the right of action accrued. Plaintiffs assert that the right to action did not accrue until they exhausted their administrative remedies on July 25, 2015, when Moore sent Plaintiffs a letter stating that the April 7, 2006 letter was final for the BIA, in response to Plaintiffs' appeal in April 2015. (Doc. No. 186 at 20.) Plaintiffs further allege that because they did not receive any letter regarding denial in 2006 or notice of the final agency action until Attorney McIntosh received responses to her FOIA requests on October 1, 2014, and May 27, 2015, they did not have actual notice of the BIA's decision. (*Id.*) Plaintiffs correctly assert "that knowledge of injury is essential for a cause of action to accrue." *Shiny Rock Min. Corp.*, 906 F.2d at 1364; *see also Acri v. Int'l Ass'n of Machinists*, 781 F.2d 1393, 1396 (9th Cir. 1986) ("Under federal law a cause of action accrues when the plaintiff is aware of the wrong and can successfully bring a cause of action."), *cert. denied*, 479 U.S. 816 (1986). "Actual knowledge of government action, however, is not required for a statutory period to commence." *Id.*

In their motion, Defendants assert Plaintiffs' initial complaint was filed more than ten years after the denial of the Enrollment Committee's request to increase Ms. Contreras' blood degree and the return of Plaintiffs' applications on or around April 7, 2006, and thus untimely. (Doc. No. 183 at 24–25.) Defendants point to the Administrative Record ("AR"),[1] which indicates that once the Enrollment Committee confirmed receipt of DOI's final decision, the Enrollment Committee then mailed each enrollment applicant a letter

---

[1] References to the Administrative Record (Doc. No. 165) will be designated with the prefix "AR" followed by the appropriate Bates-stamped page number.

informing them of the BIA's decision and the Enrollment Committee's concurrence with that decision. (*Id.* at 25.) In a letter dated July 28, 2006, the Enrollment Committee then sent the BIA's Southern California Agency a list of individuals they determined did not qualify for enrollment in the Band (allegedly including several Plaintiffs) and stated that notices were sent to them via certified mail. (*Id.*) Further, Defendants assert that even if Plaintiffs had not received a letter with the BIA's decision, Plaintiffs should have reasonably known that their applications had not been approved well before the statute of limitations expired. (*Id.* at 26.)

The Court finds Plaintiffs have adequately alleged they lacked actual notice of the final agency action. However, Defendants correctly assert that Plaintiffs should have known or could reasonably have discovered within six years of April 7, 2006, of the denial to increase Ms. Contreras' blood degree and enroll Plaintiffs in the Band. (*See* Doc. No. 183 at 26.) Indeed, facial challenges to agency actions must be raised within six years of promulgation because "[t]he grounds for such challenges will usually be apparent to any interested citizen within a six-year period following promulgation of the decision." *Wind River Mining Corp.*, 946 F.2d at 715. Plaintiffs here had six years in which to inquire about the status of their request to increase Ms. Contreras' blood degree and enroll in the Band and to bring their lawsuit.

Additionally, the Court finds the BIA's decision became effective thirty days after April 7, 2006, when the time for appeal under former 25 C.F.R. § 48.9 expired. (*See* AR 30.) The Code of Federal Regulations specifically defines when a decision becomes final for the Department of the Interior or the BIA under 5 U.S.C. § 704: "Decisions made by officials of the [BIA] shall be effective *when the time for filing a notice of appeal has expired and no notice of appeal has been filed*." 25 C.F.R. § 2.6(b) (emphasis added). Requiring plaintiffs to exhaust their administrative remedies "allows agencies to develop a complete factual record and apply their expertise before judicial review occurs." *White Mountain Apache Tribe v. Hodel*, 840 F.2d 675, 677 (9th Cir. 1988). Here, Plaintiffs bring their APA claim under former 25 C.F.R. §§ 48, et seq., which states an "applicant shall

1 | then have thirty (30) days from the date of the mailing of the notice to him [of the Director's
2 | determination] to file with the Director an appeal from the rejection of his application[.]"
3 | (AR 30.) Additionally, Plaintiffs fail to cite case law for their assertion that the statute of
4 | limitations does not begin to run until an appeal is filed *nine years* after the final agency
5 | action, and the Court finds this interpretation of the law unreasonable. Thus, the Court finds
6 | the statute of limitations on Plaintiffs' claim began to run on or around May 7, 2006, thirty
7 | days after the April 7, 2006 letter was issued.

8 |       Plaintiffs next contend that if the Court finds they filed their complaint beyond the
9 | six-year statute of limitations, that the Court should apply the doctrine of equitable tolling.
10 | (Doc. No. 186 at 14.) However, Plaintiffs did not diligently pursue their rights or show that
11 | extraordinary circumstances prevented them from doing so. Although Plaintiffs assert "the
12 | non-San Pasqual Trask descendants mandate all Tribal Government meetings be closed to
13 | all people, except Federally Recognized Tribal members" and "the BIA would not meet
14 | with the San Pasqual descendants who are not Federally Recognized Tribal members," (*id.*
15 | at 15), Plaintiffs have failed to make any showing that attempts were made to pursue their
16 | rights. Equitable tolling is therefore not appropriate. *See Kwai Fun Wong v. Beebe*, 732
17 | F.3d 1030, 1052 (9th Cir. 2013) (the party seeking equitable tolling must establish: "(1) that
18 | [it] has been pursuing [its] rights diligently, and (2) that some extraordinary circumstances
19 | stood in [its] way." (internal quotation marks omitted)), *aff'd sub nom*, *United States v.*
20 | *Kwai Fun Wong*, 575 U.S. 402 (2015).

21 |       Lastly, Plaintiffs' argument that there is a "continuing violation" fails because the
22 | "continuing violations" doctrine "is not applicable in the context of an APA claim for
23 | judicial review." *Gros Ventre Tribe v. United States*, 344 F. Supp. 2d 1221, 1229 n.3 (D.
24 | Mont. 2004), *aff'd*, 469 F.3d 801 (9th Cir. 2006); *see also Preminger v. Sec'y of Veterans*
25 | *Affairs*, 517 F.3d 1299, 1307 (Fed. Cir. 2008).

26 |       Based on the foregoing, the Court finds Plaintiffs' APA claims barred by the statute
27 | of limitations.
28 | ///

## III. CONCLUSION

For all the reasons stated, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiffs' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: December 14, 2021

Hon. Anthony J. Battaglia
United States District Judge