# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY ALEGRE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No.:  16-cv-02442-AJB-MSB<br>Consolidated with<br>Case No.:  17-cv-01149-AJB-MSB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIFTH AMENDED COMPLAINT**<br><br>(Doc. No. 265) |

//

//

//

//

//

//

//

//

//

1

16-cv-02442-AJB-MSB

Before the Court is the United States'[1] Motion to Dismiss Plaintiffs'[2] Fifth Amended Complaint. (Doc. No. 265.) The motion is fully briefed. (Doc. Nos. 265; 267–69.) For the reasons set forth below, the Court **GRANTS IN PART and DENIES IN PART** the United States' motion.

## I.    BACKGROUND

### A.    Factual Background

This action arises from Plaintiffs' long-standing desire for federal recognition as members of the San Pasqual Band of Mission Indians ("San Pasqual" or the "Tribe").

The Tribe is a federally recognized Indian tribe whose ancestors occupied the San Pasqual Valley. *Alto v. Black*, 738 F.3d 1111, 1116 (9th Cir. 2013). Membership in the Tribe provides material benefits, including monthly per capita income and "voting [rights], housing, land allotments, paid vacations, national scholarships, [and] paid college tuition." (Doc. No. 254-1 ¶ 57.) To be eligible for membership in the Tribe, an individual must have at least 1/8 San Pasqual blood. (*Id.* ¶¶ 27, 75.)

In 1960, the United States promulgated certain regulations that "addressed tribal enrollment criteria, the process for completing an initial membership roll, the procedures for keeping the membership roll current, and the purposes for which the roll was to be used." *Alto*, 738 F.3d at 1116. These "1960 Regulations" were codified at 25 C.F.R.

---

[1]      Defendants in these consolidated actions are the United States of America; the U.S. Department of Interior ("DOI"); Doug Burgum, in his official capacity as Secretary of DOI; Bryan Mercier, in his official capacity as Director of the Bureau of Indian Affairs; Lance Wenger, in his official capacity as Regional Solicitor for DOI's Office of the Solicitor's Pacific Southwest Region; Amy Dutschke, in her official capacity as Regional Director for DOI's Indian Affairs' Pacific Region; Javin Moore, in his official capacity as Superintendent for DOI's Indian Affairs' Southern California Agency; and 200 Doe Defendants. (Doc. No. 254-1 at 6.) This Order refers to all Defendants collectively as the "United States."

Additionally, page citations refer to the pagination generated by the Case Management/Electronic Case Files system.

[2]      The list of Plaintiffs in these consolidated actions spans five pages of the Fifth Amended Complaint. (*See* Doc. No. 254-1 at 1–5.) Accordingly, the Court will not endeavor to name all Plaintiffs in this footnote. Nevertheless, the Order refers to all Plaintiffs collectively as "Plaintiffs."

16-cv-02442-AJB-MSB

§§ 48.1–48.15 (1960). *Id.* The Tribe subsequently adopted a Constitution that incorporated the 1960 Regulations. *Id.*

In 1996, the United States repealed the 1960 Regulations. *Id.* at 1116 & n.1. However, the Tribe has not amended its Constitution to reflect the repeal of the 1960 Regulations or to remove the Constitution's references to the 1960 Regulations. (Doc. No. 254-1 ¶ 51.) The Constitution consequently still provides that "[a]ll membership in the band shall be approved according to the Code of Federal Regulations, Title 25, Part 48.1 through 48.15 and an enrollment ordinance which shall be approved by the Secretary of the Interior." (Doc. No. 254-5 at 2.) Under this framework, an individual must receive approval from both the Tribe and the United States Bureau of Indian Affairs ("Bureau") to receive federal recognition as a member of the Tribe. (*See* Doc. No. 254-1 ¶¶ 51–53.)

Plaintiffs in this action are descendants of Modesta Martinez Contreras ("Contreras"), whom the United States has recognized as having 3/4 San Pasqual blood. (*Id.* ¶¶ 26, 30; *see also id.* ¶ 9.)

On April 10, 2005, the Tribe legally enrolled Plaintiffs as members of the Tribe. (*Id.* ¶ 12.) However, the United States has not granted Plaintiffs federal recognition as members of the Tribe based on the United States' prior recognition that Contreras only possessed 3/4 San Pasqual blood. (*See id.* ¶ 22.)

Around that time, the Tribe asked the United States to correct its records to recognize that Contreras possessed 4/4 San Pasqual blood. (*Id.* ¶¶ 66–67.) On February 3, 2006, in a letter signed by Amy Dutschke ("Dutschke"), the United States denied the Tribe's request ("2006 Decision"). (*Id.* ¶ 41.)

This litigation ensued.

By 2023, the parties reached an agreement for the United States to reconsider the 2006 Decision. (*Id.* ¶ 4.) On October 31, 2024, Dutschke signed a new letter that, again, denied the Tribe's request ("2024 Decision"). (*Id.* ¶¶ 9, 41.)

This Fifth Amended Complaint ("5AC") follows. (*Id.* ¶ 9)

Further background can be found in prior orders. (Doc. Nos. 43; 98; 99; 121; 212.)

16-cv-02442-AJB-MSB

**B.     Procedural Background**

This action has experienced a tortured past. Plaintiffs initiated the first case in this action in September 2016. (Doc. No. 1.) Several rounds of amendments to the Complaint and dismissals of various claims followed in the ensuing three years. (Doc. Nos. 13; 43; 44; 59; 62; 98; 99; 105; 121.) During this time, Plaintiffs initiated two related actions, one of which was consolidated here and the other of which was dismissed. (Doc. No. 43 at 20.)

In 2020, Defendants filed an Answer to the Fourth Amended Complaint. (Doc. No. 122.) The parties proceeded to cross-move for summary judgment the following year. (Doc. Nos. 176; 183.) In December 2021, Defendants prevailed on summary judgment with a statute-of-limitations-based defense. (Doc. No. 212.)

Plaintiffs successfully appealed. *Alegre v. Jewell*, No. 22-55070, 2023 WL 2236932 (9th Cir. Feb. 27, 2023). The Ninth Circuit concluded that it could not determine when Plaintiffs' causes of action accrued because the Court "did not clearly identify a final agency action or actions, and also failed to make a finding as to when Plaintiffs discovered, or in the exercise of reasonable diligence should have discovered, that they had been injured." *Id.* at *2. The Ninth Circuit thus remanded the matter with directions for the Court to "identify the final agency action or actions and make a specific finding as to when Plaintiffs discovered, or in the exercise of reasonable diligence should have discovered, the final agency action or actions." *Id.* at *3.

Following the remand, however, the parties reached an agreement for the United States to reconsider the 2006 Decision, after which Plaintiffs could file an amended complaint challenging the reconsideration decision, if necessary. (Doc. No. 242 ¶ 6.) The parties thus asked the Court to remand the matter to the United States. (*Id.* ¶¶ 7–10.) The Court obliged. (Doc. No. 244.)

The United States completed its reconsideration process on October 31, 2024, and Plaintiffs moved for leave to file the 5AC in February 2025. (Doc. Nos. 252; 254.) The Court granted Plaintiffs leave to file 5AC, the operative complaint. (Doc. No. 258.)

16-cv-02442-AJB-MSB

The 5AC asserts seven causes of action, or counts, which are addressed in greater detail below. (Doc. No. 254-1 ¶¶ 86–194.)

The United States moves to dismiss all counts in the 5AC except the first. (Doc. No. 265 at 2.)

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Accordingly, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). In civil cases, federal courts have subject matter jurisdiction over only those cases where either diversity jurisdiction or federal question jurisdiction exists. *See Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1068 (9th Cir. 2005). Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332. Federal question jurisdiction exists in cases that arise under federal law. *Id.* § 1331.

Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the party asserts a factual challenge, the court may consider extrinsic evidence demonstrating or refuting the existence of jurisdiction without converting the motion to dismiss into a motion for summary judgment. *Id.* The party asserting subject matter jurisdiction has the burden of persuasion for establishing it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).

16-cv-02442-AJB-MSB

**B.      Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks committed). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

**C.      Sovereign Immunity**

Generally, the United States and its agencies may not be sued in federal court unless Congress has waived sovereign immunity. *United States v. Dalm*, 494 U.S. 596, 608 (1990). If Congress has not waived the federal government's immunity for a particular claim, courts lack jurisdiction over that claim and must dismiss it. *Id.* "A mere assertion that jurisdictional statutes apply does not suffice to confer jurisdiction when . . . the government did not waive its immunity." *Hughes v. United States*, 953 F.2d 531, 539 n.5 (9th Cir. 1992). Any waiver "must be construed strictly in favor of the sovereign" and "not

16-cv-02442-AJB-MSB

enlarged beyond what the language requires." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992).

## III.   DISCUSSION

### A.   An overview of the Fifth Amended Complaint.

For the benefit of evaluating the parties' various arguments, the Court first presents a high-level summary of the 5AC.

The 5AC presents a number of challenges to the 2024 Decision. (*See* Doc. No. 254-1 ¶¶ 9, 86–194.) The 5AC indicates that the first five causes of action arise from the Administrative Procedure Act ("APA"). (*See id.* at 41 (Count 1), 56 (Count 2), 57 (Count 3), 60 ¶ 136 (Count 4), 65 (Count 5).) It hints that the sixth cause of action arises from the APA. (*Id.* ¶ 185.) However, the 5AC does not clearly articulate a jurisdictional basis for Count 7. (*See id.* ¶¶ 189–94.)

Delving into each count more specifically, Count 1 alleges that the United States violated the APA for a multitude of reasons, including, for example, (1) "ignor[ing] and/or reject[ing]" certain evidence, (2) treating certain Plaintiffs differently than certain individuals who do not have San Pasqual blood, and (3) applying an incorrect standard of review in the 2024 Decision. (*Id.* ¶¶ 108, 111.)[3]

Count 2 claims that the United States violated the APA by treating certain Plaintiffs differently than certain individuals who do not have San Pasqual blood. (*Id.* ¶¶ 125–126.)

Count 3 argues that the United States violated the APA by (1) failing to follow APA requirements when promulgating the 1960 Regulations; (2) applying the 1960 Regulations to grant federal recognition as Tribe members to certain individuals who do not have San Pasqual blood; and (3) treating certain Plaintiff differently than certain individuals who do not have San Pasqual blood. (*Id.* ¶¶ 128–32.)

---

[3]   Because the United States does not seek to dismiss Count 1, the Court will not opine on whether the first cause of action (or the 5AC as a whole) complies with Federal Rule of Civil Procedure 8(d)(1).

16-cv-02442-AJB-MSB

Count 4 contends that the United States violated the APA by rejecting certain evidence. (*Id.* ¶¶ 134–54.)

Count 5 asserts that the United States violated the APA and the Fifth Amendment's Equal Protection Clause by treating Plaintiffs differently than certain individuals who do not have San Pasqual blood. (*Id.* ¶¶ 156–82.)

Count 6 avers that the United States negotiated in bad faith when seeking remand and breached their trust obligations and fiduciary duties in making the 2024 Decision. (*Id.* ¶¶ 184–88.) Plaintiffs request a "sanction" for the alleged bad faith negotiations and for Defendants to pay Plaintiffs' "attorney fees for the time spend preparing for the Remand." (*Id.* ¶ 188.)

Lastly, Count 7 demands that the Court enter preliminary and permanent injunctions "prohibiting the [Bureau] from approving any enrollment ordinance that would remove [the Bureau] from the enrollment process." (*Id.* ¶¶ 190–94.)

**B.     The second and fourth causes of action are dismissed as duplicative and lacking a jurisdictional basis.**

The United States seeks to dismiss Counts 2 and 4 on the bases that the causes of action (1) merely seek remedies and (2) are duplicative of Count 1. (Doc. No. 265 at 4–5.)

In response, Plaintiffs generally argue that each of the causes of action complies with the requirements of Federal Rule of Civil Procedure 8(a). (Doc. No. 267 at 8–12.) However, Plaintiffs do not dispute that Counts 2 and 4 are duplicative of Count 1. (*See generally id.*)

Pursuant to Federal Rule of Civil Procedure 8(d)(2), a "party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." However, Rule 8(d)(2) does not allow a plaintiff to simply repeat his or her claim. In such a scenario, it "is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims." *M.M. v. Lafayette School Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012).

16-cv-02442-AJB-MSB

The Court agrees with the United States that Counts 2 and 4 duplicate Count 1. Again, Plaintiffs do not dispute that the challenged causes of action are duplicative. (*See generally* Doc. No. 267 at 8–12.)

A review of Counts 2 and 4 also confirms the duplicative nature of these causes of action. First, Count 2 challenges the United States' failure to apply the "Total Indian Blood" standard to adjudicate certain Plaintiffs' application for federal recognition. (Doc. No. 254-1 ¶¶ 125–26.) Plaintiffs object to this very facet of the decision-making process in Count 1. (*Id.* ¶¶ 108, 123.) Second, Count 4 challenges the United States' rejection and treatment of certain evidence in developing the 2024 Decision. (*Id.* ¶¶ 146–48, 151.) Count 1 also contests these aspects of the decision-making process. (*Id.* ¶ 108.)

Given that Counts 2 and 4 merely duplicate portions of and are subsumed under Count 1, the Court **GRANTS** the United States' motion to dismiss those causes of action. *M.M.*, 681 F.3d at 1091. For the same reason, however, the Court notes that this dismissal does not prevent Plaintiffs from raising any arguments that they would have presented under Counts 2 and 4 as part of their arguments in support of Count 1.

### C.    The third cause of action is dismissed as moot, for lack of standing, and as duplicative.

The United States next asks the Court to dismiss Count 3 as moot because the 1960 Regulations have been repealed. (Doc. No. 265 at 5–6.)

Plaintiffs respond that the cause of action is not moot because the 1960 Regulations live on as part of the San Pasqual Constitution. (Doc. No. 267 at 16–19.)

The United States is partially correct. Preliminarily, Count 3 raises three related claims. First, Plaintiffs challenge the method by which the United States promulgated the 1960 Regulations. (Doc. No. 256-1 ¶¶ 128–29, 131.) Second, Plaintiffs object to the United States' application of the 1960 Regulations to recognize certain individuals who do not have San Pasqual blood as members of the Tribe. (*Id.* ¶¶ 130–31.) Third, Plaintiffs protest the United States' application (or failure to apply) the 1960 Regulations to recognize Plaintiffs as members of the Tribe. (*Id.*)

16-cv-02442-AJB-MSB

However, none of these claims survives the United States' motion to dismiss.

Beginning with the challenge to the method by which the United States promulgated the 1960 Regulations, such a challenge is moot. The "repeal, amendment, or expiration of [a law] will render an action challenging the [law] moot, unless there is a reasonable expectation that the [promulgating authority] will reenact the challenged provision or one similar to it." *Bd. of Trustees of Glazing Health & Welfare Trust v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019). The parties do not dispute that the 1960 Regulations were repealed in 1996. (Doc. Nos. 265 at 5 (citing *Alto*, 738 F.3d at 1116 & n.1); 267 at 16–19.) Nor do any of the parties present evidence that the United States has reenacted or attempted to reenact the 1960 Regulations in the three intervening decades such that an exception to the mootness doctrine might apply. (*See generally* Doc. Nos. 265; 267; 269.) Accordingly, Plaintiffs' challenge to the procedure by which the United States promulgated the 1960 Regulations is moot. *Glazing Health*, 941 F.3d at 1199.

Turning to the United States' application of the 1960 Regulations to certain individuals without San Pasqual blood, Plaintiffs have not established standing to challenge such application. Federal courts bear "an 'independent obligation' to ensure that a [claim] falls within our Article III jurisdiction by confirming that standing exists." *Sterling v. Feek*, 150 F.4th 1235, 1244 (9th Cir. 2025) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *In re Burrell*, 415 F.3d 994, 997 (9th Cir. 2005)). To demonstrate standing, a Plaintiff must show they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs lack standing for this aspect of Count 3.

In articulating their standing to bring the present action, Plaintiffs allege that "they have suffered harm as a direct result of the Defendants' actions." (Doc. No. 254-1 ¶ 21.) Plaintiffs go on to contend that the United States' application of the 1960 Regulations have allowed "non-San Pasqual blood persons [to] cause[] an illegal moratorium to be placed on enrollment decisions in approximately 2009" and to "gerrymander the [Tribe's]

government." (*Id.* ¶¶ 68–69.) Plaintiffs continue to allege that the gerrymandering has allowed individuals without San Pasqual blood to "dismiss[] the legally valid and constitutionally formed Enrollment Committee in 2006 and install[] an illegal enrollment committee." (*Id.* ¶ 70.)

Accepting these allegations as true, however, it is not clear how the "illegal moratorium" or "gerrymander[ing]" has injured Plaintiffs. After all, the Tribe has already recognized Plaintiffs as Tribe members. (*Id.* ¶¶ 24, 30.) It is also not clear that any such injury is traceable to the United States since the "chain of causation 'involves numerous third parties' whose 'independent decisions' collectively have a 'significant effect' on [Plaintiffs'] injuries." *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011.) Under these circumstances, Plaintiffs have not alleged a cognizable injury in fact that is traceable to the United States' application of the 1960 Regulations to certain individuals without San Pasqual blood.

Even if Plaintiffs could allege a cognizable and traceable injury in fact, Plaintiffs may still be barred from challenging the United States' application of the 1960 Regulations to certain individuals without San Pasqual blood on statute of limitations grounds. Plaintiffs allege that the United States recognized these individuals as members of the Tribe in 1966. (Doc. No. 254-1 ¶ 78.) Plaintiffs were also aware of this action and any related harms in 2017 when they filed their Second Amended Complaint. (Doc. No. 44 ¶¶ 45, 63–66.) Consequently, any claims may be time-barred at this point.

As for Plaintiffs' protests to the United States' application (or lack thereof) of the 1960 Regulations to recognizing Plaintiffs as members of the Tribe, these protests are duplicative of Count 1's allegation that the United States "[i]gnored and/or rejected the presumptions that Defendants applied to [certain individuals who do not have San Pasqual blood] and refused to apply those presumptions to Plaintiffs' applications." (Doc. No. 254-1 ¶ 108.)

Thus, the Court **GRANTS** the United States' motion to dismiss Count 3. Specifically, Plaintiffs' challenge to the United States' promulgation of the 1960

Regulations is moot. Plaintiffs lack standing to challenge the United States' application of the 1960 Regulations to recognize certain individuals without San Pasqual blood as members of the Tribe. Lastly, Plaintiffs' objection to how the United States applied (or did not apply) the 1960 Regulations as a part of the 2024 Decision is raised by and arguable under Count 1.

### D.    The fifth cause of action presents a cognizable alternative claim.

On Count 5, the United States asserts that the claim should be dismissed because it is "substantially identical to Plaintiffs' third cause of action asserted within their fourth amended complaint." (Doc. No. 265 at 6.) The United States adds that the Court lacks subject matter jurisdiction over the fifth cause of action because Plaintiffs have failed to identify a waiver of sovereign immunity. (*Id.* at 6–7.)

Instead of addressing whether Count 5 is distinguishable from the previously dismissed cause of action, Plaintiffs insist that the Court should reconsider its prior decision and find that the APA waives the United States' sovereign immunity to the cause of action. (Doc. No. 267 at 19–22.) Alternatively, Plaintiffs suggest that the Court should ignore the United States' sovereign immunity because "[d]ue process and equal protection guarantees a special precedence over sovereign immunity." (*Id.* at 22–23.)

The parties' arguments miss the ball. A review of the Fourth Amended Complaint and the 5AC reveals that the causes of action identified by the United States are materially distinguishable. In particular, Plaintiffs' third cause of action in the Fourth Amended Complaint alleged bare violations of the Fifth Amendment's Equal Protection Clause. (Doc. No. 105-1 ¶ 110.) Here, however, Plaintiffs allege the Equal Protection Clause violations stem from the alleged APA violations. (Doc. No. 254-1 ¶ 182.)

Plaintiffs' new allegation regarding the APA changes the calculus. The Court previously did not address whether the APA provides a waiver of sovereign immunity for Plaintiffs' Equal Protection Clause-related claims because Plaintiffs did not allege such a distinction in their Fourth Amended Complaint. (*See generally* Doc. No. 121.)

Accordingly, the Court's prior order is not applicable here and the Court need not reconsider it.

Additionally, Plaintiffs are correct that the APA waives the United States' sovereign immunity to Count 5. Again, as relevant here, APA "§ 702 waives sovereign immunity for all non-monetary claims" against final federal agency actions. (Doc. No. 99 at 6 (quoting *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171 (9th Cir. 2017)).) The United States does not dispute that Count 5 raises a non-monetary claim against a final federal agency action. (*See generally* Doc. Nos. 265; 269.) Accordingly, the Court has no trouble finding that there is a waiver of sovereign immunity here. *See Navajo Nation*, 876 F.3d at 1171.

Moreover, the Court notes that Count 5 is distinguishable from Count 1. In the first cause of action, Plaintiffs generally assert that the 2024 Decision is "arbitrary, capricious and/or in violation of law." (*See, e.g.*, Doc. No. 254-1 ¶ 108.) Such language parallels 5 U.S.C. § 706(2)(A), which requires a reviewing court to "hold unlawful and set aside agency action" that is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Although Plaintiffs repeat this language in Paragraph 182, the rest of Count 5 makes clear that Plaintiffs rely on the Fifth Amendment's Equal Protection Clause as the basis of the claim. (*See generally* Doc. No. 254-1 ¶¶ 155–82.) This basis is more properly considered a request to set aside the 2024 Decision as "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

The Court thus finds that the United States has waived its sovereign immunity to Count 5 through the APA, and that Count 5 permissibly sets out an alternative statement of Count 1. *Navajo Nation*, 876 F.3d at 1171; Fed. R. Civ. P. 8(d)(2). Accordingly, the United States' motion to dismiss Count 5 is **DENIED**.

16-cv-02442-AJB-MSB

**E.**     **The sixth cause of action is dismissed for failure to state a claim on which relief can be granted.**

Continuing to Count 6, the United States asserts that the cause of action should be dismissed because Plaintiffs fail to identify a jurisdictional basis for the claim. (Doc. No. 265 at 7–8.) In particular, the United States points out that Plaintiffs have failed to identify "an associated waiver of sovereign immunity." (*Id.* at 8.)

In response, Plaintiffs point to pages 8 through 11 of the 5AC as having "alleged the proper jurisdictional basis for their sixth cause of action." (Doc. No. 267 at 23.) Plaintiffs go on to declare that they "addressed" the jurisdiction and sovereign immunity issues "above." (*Id.* at 24.) Plaintiffs also baldly state that "[t]he doctrine of sovereign immunity is not applicable to this cause of action." (*Id.*) Alternatively, Plaintiffs suggest that the Court "should consider this cause of action to be a 'Motion to Enforce' the stipulation/settlement agreement." (*Id.* at 25.)

Plaintiffs' responses are perplexing. The Court has previously and repeatedly admonished Plaintiffs that they must "state the basis for the Court's subject matter jurisdiction and Defendants' waiver of sovereign immunity as to each cause of action. Failure to comply with Rule 8(a) may result in dismissal with prejudice under Rule 41(b)." (Doc. Nos. 43 at 13; 59 at 1; 121 at 13.) However, the 5AC does not explicitly address these items for Count 6.

To the extent Plaintiffs intend to invoke the APA as the jurisdictional basis and waiver of sovereign immunity for the sixth cause of action, such an argument fails. Plaintiffs identify a "sanction . . . for bad faith negotiations" and an "order [requiring] Defendants to pay [Plaintiffs'] attorney fees for the time spent preparing for the Remand" as their desired remedies for Count 6. (Doc. No. 254-1 ¶ 188.) This creates a severe defect in Plaintiffs' reliance on the APA.

The APA only waives sovereign immunity for actions "seeking relief other than money damages." 5 U.S.C. § 702. The Court is compelled to construe Plaintiffs' requests for a "sanction" and "attorney fees" as requests for money damages. (*See* Doc. No. 254-1

16-cv-02442-AJB-MSB

¶ 188.) As the Supreme Court has explained, damages "are intended to provide a [party] with monetary compensation for an injury to his person, property, or reputation." *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988). Plaintiffs' request for attorney fees appears to be a thinly veiled attempt to obtain monetary compensation for an injury to their property, specifically, the cost of paying their counsel to negotiate the remand. (*See* Doc. No. 254-1 ¶¶ 184–88.) The request for a sanction similarly looks like a demand for compensation for the perceived loss of a desired benefit. (*See id.*) The APA consequently does not provide a waiver of sovereign immunity for Count 6. *See* 5 U.S.C. § 702.

Turning to Plaintiffs' "alternative" suggestion that the Court "should consider this cause of action to be a 'Motion to Enforce' the stipulation/settlement agreement," such a suggestion is illogical. (Doc. No. 267 at 25.) Plaintiffs do not dispute the United States' assertion that "there is no provision in the parties' agreement . . . preventing the Regional Director from assuming th[e] role" of adjudicating the reconsideration of the 2006 Decision. (*Compare* Doc. No. 265 at 7, *with* Doc. No. 267 at 23–25.) In the absence of such a provision, the Court is puzzled by what Plaintiffs expect the Court to enforce.

As for Plaintiffs' passing statement that the "doctrine of sovereign immunity is not applicable to this cause of action" (Doc. No. 267 at 24), any argument based thereon "is too undeveloped to be capable of assessment." *Hibbs v. Dep't of Human Resources*, 273 F.3d 844, 873 n.34 (9th Cir. 2001).

The only perceivable jurisdictional basis for Count 6 in the 5AC is the APA. (*See* Doc. No. 254-1 ¶¶ 184–88.) However, the APA does not waive the United States' sovereign immunity for actions seeking money damages. 5 U.S.C. § 702. Yet that is precisely what Plaintiffs' sixth cause of action seeks. Accordingly, the Court **GRANTS** the United States' motion to dismiss Count 6.

### F.    The seventh cause of action is dismissed for lack of a jurisdictional basis.

Lastly, the United States asks the Court to dismiss Count 7 because it "is simply a request for injunctive relief" that is "duplicative of the first cause of action." (Doc. No. 265 at 4–5.)

Plaintiffs object that there is more to Count 7 and that the Court has jurisdiction to grant the requested relief under the APA. (Doc. No. 267 at 12–16.) Plaintiffs indicate that if the APA does not apply, then the Fifth Amendment's "[d]ue process and equal protection guarantees enjoy a special precedence over sovereign immunity." (*Id.* at 15–16 (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976)).)

This claim presents a bad case of déjà vu. Plaintiffs previously initiated a separate action asking the Court to provide "injunctive relief preventing Defendants from taking any action to approve a proposed amendment to the [Tribe's] Constitution and/or enrollment criteria and/or procedures that remove federal government oversight from the enrollment process." (Doc. No. 43 at 14; *see also id.* at 8.) The Court dismissed that action for lack of jurisdiction because there was no waiver of sovereign immunity under the APA insofar as "there [was] no final agency action with regard to a proposed amendment to the [Tribe's] Constitution." (*Id.* at 19.) The Court added that "[u]nless and until Defendants take final action to approve an amendment to the [Tribe's] Constitution, Plaintiffs cannot bring a claim seeking to enjoin such action." (*Id.*)

Despite the Court's admonitions, Plaintiffs attempt to resurrect the same claim without identifying any change in circumstances to merit a different conclusion. (*Compare id.* at 13–19, *with* Doc. No. 254-1 ¶¶ 189–94.) This warrants dismissal. *M.M.*, 681 F.3d at 1091.

Meanwhile, Plaintiffs' suggestion that the Fifth Amendment somehow overrides federal sovereign immunity is devoid of merit. The United States "is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586

16

16-cv-02442-AJB-MSB

(1941). Any waiver of sovereign immunity "must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969). The Due Process Clause of the Fifth Amendment is not a "general waiver[] of sovereign immunity." *Munns v. Kerry*, 782 F.3d 402, 413 (9th Cir. 2015). Instead, "an independent waiver of sovereign immunity" is required to effectuate the protections of the Due Process Clause against the United States. *See id.* at 413–14.

To the extent Plaintiffs rely on *Fitzpatrick*, 427 U.S. 445, Plaintiffs have failed to provide any explanation of how the case is relevant. In turn, any argument based thereon "is too undeveloped to be capable of assessment." *Hibbs*, 273 F.3d at 873 n.34.

Because Plaintiffs have failed to identify a jurisdictional basis for Count 7, the Court **GRANTS** the United States' motion to dismiss Count 7.

### G.   Plaintiffs have limited leave to amend.

Plaintiffs request leave to amend "to clear up any questions and objections raised by the Defendants." (Doc. No. 267 at 25.) Generally speaking, courts "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court finds that granting Plaintiffs limited leave to amend the 5AC is appropriate, should they so desire.

First, the Court **DENIES** Plaintiffs leave to amend Counts 2 and 4 insofar as those claims are duplicative of Count 1.

Second, the Court **DENIES** Plaintiffs leave to amend Count 3 as it pertains to the process by which the United State promulgated the 1960 Regulations. The repeal of the 1960 Regulations mooted that aspect of Count 3. The Court also **DENIES** Plaintiffs leave to amend Count 3 as it relates to the United States' application (or lack thereof) of the 1960 Regulations to recognizing Plaintiffs as members of the Tribe. This aspect of Count 3 is duplicative of Count 1. However, the Court **GRANTS** Plaintiffs leave to amend Count 3 to establish standing to challenge the United States' application of the 1960 Regulations to certain individuals without San Pasqual blood.

17

16-cv-02442-AJB-MSB

Third, the Court **GRANTS** Plaintiffs leave to amend Count 6 to identify a jurisdictional basis for the claim. The Court reiterates and emphasizes that any amendment must "state the basis for the Court's subject matter jurisdiction and Defendants' waiver of sovereign immunity as to [the] cause of action. Failure to comply with Rule 8(a) may result in dismissal with prejudice under Rule 41(b)." (Doc. Nos. 43 at 13; 59 at 1; 121 at 13.)

Fourth, the Court **DENIES** Plaintiffs leave to amend Count 7. The Court has previously dismissed an identical claim and Plaintiffs have failed to heed the Court's prior admonitions. (Doc. No. 43 at 13–19; *see also* Doc. Nos. 43 at 13; 59 at 1; 121 at 13.)

If Plaintiffs wish to amend Counts 3 and 6, Plaintiffs must file any amendment no later than **April 2, 2026**.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** the United States' motion to dismiss. (Doc. No. 265.) Plaintiffs' second, third, fourth, sixth, and seventh causes of action are **DISMISSED**.

**IT IS SO ORDERED**.

Dated:  March 12, 2026

Hon. Anthony J. Battaglia
United States District Judge

16-cv-02442-AJB-MSB